[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
01/18/2000
THOMAS K. KAHN
CLERK

----------------------
No. 98-4211
----------------------
D. C. Docket No. 97-7164-CIV-FAM

DAVID VINCENT, INC.,
d.b.a. Omni Adult Bookstore,
JOHN DOE, on behalf of himself
and all others similarly situated,

Plaintiffs-Appellants,

versus

BROWARD COUNTY, FLORIDA,

Defendant-Appellee.

_____

----------------------
No. 98-4308
----------------------
D. C. Docket No. 97-7164-CIV-FAM

DAVID VINCENT, INC.,
d.b.a. Omni Adult Bookstore,
JOHN DOE, on behalf of himself
and all others similarly situated,
DMH, INC., a Florida corporation,
d.b.a. Broward Adult Bookstore

Plaintiffs-Appellants-

Cross-Appellees,

versus

BROWARD COUNTY, FLORIDA,

Defendant-Appellee-
Cross-Appellant.

-----------------------
Appeals from the United States District Court
for the Southern District of Florida
-----------------------
**(January 18, 2000)**

Before COX, Circuit Judge, KRAVITCH, Senior Circuit Judge, and PROPST[*],
Senior District Judge.

KRAVITCH, Senior Circuit Judge:

Plaintiffs-appellants are adult bookstores in unincorporated Broward

County, Florida, challenging the constitutionality of Broward County's licensing

and zoning ordinances for adult businesses.[1] The district court concluded that

---

[*]Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of
Alabama, sitting by designation.

[1] John Doe, described in the Second Amended Complaint paragraph 7 as a representative
of all members of the adult public "who receive and enjoy . . . expressive materials" from the
bookstores, is also a plaintiff and appellant. The district court orders resolving the claims in this
case describe the plaintiffs simply as three adult bookstores, however, and appellants' brief does
not mention John Doe. Because the bookstores figure more prominently in the materials before
this court, and because Broward County's licensing and zoning ordinances operate directly on
the bookstores, for the sake of convenience this opinion will refer to the appellants as the adult

2

plaintiffs' previous bid for a preliminary injunction of the licensing ordinance in state court barred them from seeking both preliminary and permanent injunctions in federal court. After a bench trial, the district court ruled that Broward County's zoning ordinance for adult businesses was constitutional both facially and as applied to plaintiffs.

The adult bookstores raise three issues on appeal. First, they argue that neither preclusion nor the Rooker-Feldman doctrine bar their challenge to Broward County's licensing ordinance. Second, they question the district court's ruling that Broward County's zoning ordinance is facially constitutional. Finally, appellants argue that, as applied, the zoning ordinance violates the First Amendment because it denies adequate opportunities for adult expression.

We agree with appellants that their prior efforts to obtain a temporary injunction of Broward County's licensing ordinance does not bar a subsequent claim for a permanent injunction. This circuit's precedent does, however, support the district court's ruling that the zoning ordinance is facially constitutional. Furthermore, we cannot say that the district court's findings as to the number of sites available for adult businesses under the zoning ordinance are clearly erroneous, and we agree that those sites provide an adequate opportunity for the

bookstores without reference to John Doe.

3

appellants' protected expression. We reverse the order precluding appellants' challenge to Broward County's licensing ordinance and remand for further proceedings. We affirm the district court ruling that Broward County's zoning ordinance is constitutional both facially and as applied.

# I. BACKGROUND

In 1993, Broward County adopted both a licensing and a zoning ordinance for adult businesses. See Broward County, Fla., Ordinance 93-18 (July 13, 1993) (licensing); Broward County, Fla., Ordinance 93-3 (January 26, 1993) (zoning). The licensing ordinance (93-18) establishes detailed requirements for the physical structures of adult businesses, restricts the activities that can take place on the premises, and provides a licensing regime with application procedures and inspections. The zoning ordinance (93-3) merely modified Broward's existing zoning regime for adult businesses, which this court found constitutional in International Eateries of Am. v. Broward County, 941 F.2d 1157, 1165 (11th Cir. 1991). Both the former and the new zoning ordinances require adult businesses to locate more than 500 feet from residentially zoned districts, and 1,000 feet from each other and from churches, schools, and child care facilities. The new

4

ordinance eliminates a "waiver" provision that had allowed adult businesses to locate at a non-conforming site if the surrounding community approved. The former zoning ordinance also allowed existing businesses to remain on non-conforming sites, while the new 93-3 requires adult businesses to move to a conforming location within a five-year amortization period.

Broward County's adult bookstores (the plaintiffs-appellants in this case) and adult dance establishments challenged the constitutionality of the licensing ordinance in state court in separate lawsuits, seeking both a preliminary injunction and permanent relief. Broward County removed the bookstores' case to federal court, but the plaintiffs successfully sought a remand. After a hearing, the Florida trial court denied the request for temporary injunctive relief. See Bordo, Inc. et al. v. Board of County Comm'rs of Broward County, No. 93-21553-08 (Fla. 17th Cir. Ct. Sep. 28, 1993) (Order on Plaintiffs' Motion for Temporary Injunction). The Florida Court of Appeals affirmed the denial of a preliminary injunction in the case brought by the adult dance venues. See 3229 North Federal Highway, Inc. v. Board of County Comm'rs, 646 S.2d 415 (Fla. 4th Dist. Ct. App. 1994). It then affirmed the denial of the bookstores' preliminary injunction on that authority. See Bordo, Inc. v. Board of County Comm'rs, 647 So. 2d 215 (Fla. 4th Dist. Ct. App. 1994). The Court of Appeals did certify a question to the Florida Supreme Court, but after

5

a two-year delay the state Supreme Court declined to consider the matter.[2]  See

Bordo, Inc. v. Board of County Comm'rs Broward County, 699 So. 2d 689 (Fla.

Sep. 28, 1997) (unpublished decision denying petition for review).

The bookstores then dismissed their state court claim for a permanent

injunction of the licensing ordinance and filed this case in federal court seeking

preliminary and permanent injunctions of the licensing ordinance and also

challenging the new zoning ordinance.[3]  The district court granted the County's

motions to dismiss and for summary judgment on the licensing ordinance claims,[4]

concluding that the entire challenge to 93-18 was precluded by the prior state court

litigation.  The district court also decided that International Eateries controlled the

facial challenge to the zoning ordinance, 93-3.  Because the prior zoning ordinance

had been upheld, the new (and very similar) ordinance must be constitutional as

well.

_____

[2] The question certified to the Florida Supreme Court was whether an ordinance requiring modifications *inside* a building "affects the use of land."  See 3229 N. Federal Hwy., 646 So. 2d at 227-28 (on motions for rehearing).  Florida law sets out special procedures for adopting land use ordinances.  Apparently Broward County did not file its briefs in the Supreme Court for two years, creating the lengthy gap between the Fourth District Court of Appeals' certification and the denial of rehearing.  See Brief of Respondent at 75, Bordo Inc., et al. v. Board of County Comm'rs. of Broward County, Fla., 699 So. 2d 689 (Fla. Sep. 28, 1997) (certifying that service of the brief occurred on April 3, 1997).

[3] The voluntary dismissal was without prejudice.

[4] For simplicity's sake, we will treat the district court's order as having granted summary judgment on the licensing ordinance claims.

6

The court held a bench trial for the as-applied challenge to the zoning ordinance, and ruled in favor of Broward County. The focus of the trial was whether Broward County's zoning regime left a sufficient number of sites for adult businesses to satisfy the First Amendment's requirement that time, place, and manner restrictions leave adequate avenues for protected expression. Each side presented an expert witness. Bruce McLaughlin, testifying on behalf of the adult bookstores, opined that only one site was truly available for an adult business under Broward's zoning regime. Leigh Kerr, testifying for Broward County, claimed that nine sites were available for adult businesses.

Establishing an adult business at many of the sites would be complicated, requiring the purchase of multiple plots of land, redivision of parcels, construction and landscaping, and so on. Even with that work, small lots would constrain the size of some adult businesses. Plaintiffs argued that because of permit and spot rezoning requirements, the government would have too many opportunities to stymie an adult business trying to locate at a particular site. The bookstores also claimed that a number of the sites posed unreasonable obstacles. For example, a covenant against immoral uses burdened one site, a state agency occupies part of another, and hazardous waste from a car repair facility may contaminate a third site. McLaughlin's testimony did not sway the district court, which found that

seven to nine sites were available for adult businesses in unincorporated Broward County. The district court also concluded that the number of sites available for adult businesses provided an adequate opportunity for adult expression.

Evaluating whether the county provides a constitutionally sufficient number of sites for adult businesses is complicated by the fact that the unincorporated area of Broward County is shrinking. The county encourages municipalities to annex unincorporated land, and hopes to one day control no territory at all. The size of the unincorporated territory is significantly smaller than when this court considered International Eateries, and smaller than in 1993, when the county adopted the challenged ordinances. The population also has been dropping, but at a slower rate than the land loss.

## II. DISCUSSION

We discuss three issues in turn. First, does claim preclusion, issue preclusion, or the Rooker-Feldman doctrine bar appellants' challenge to Broward County's licensing ordinance? Second, does this circuit's International Eateries decision support the district court's ruling that Broward County's zoning ordinance is facially constitutional? Finally, does Broward County's zoning ordinance, as

8

applied, provide the appellants with adequate opportunities for protected adult

expression, as required by the First Amendment?[5]

A. The Licensing Ordinance

The district court granted summary judgment on the licensing claim on

preclusion grounds.  The court noted that plaintiffs' claim for a permanent

injunction was virtually identical to the claim they had voluntarily dismissed from

their state court action after losing the bid for a temporary injunction.[6]  The court

also observed that it was plaintiffs who originally filed their case in state court and

fought removal to federal court.  The district court suspected that plaintiffs had

"test[ed] the waters" in state court, and were now searching for a more sympathetic

forum.  Vincent v. Broward County, No. 97-7164 at 8 (S.D. Fla. 1998) (Order

Granting In Part Defendant's Motion for Summary Judgment and Motion to

Dismiss).

---

[5] On appeal, Broward County also raises two alternative grounds for affirming the grant of summary judgment on plaintiffs' challenge to the zoning ordinance (93-3).  Broward County argues that the 93-3 claim is barred under the Rooker-Feldman doctrine because of the prior state court litigation involving the county's licensing ordinance.  Broward County also argues that the challenge to 93-3 as applied is not ripe because the plaintiffs did not exhaust all administrative remedies.  We do not need to address these arguments, however, because we affirm the district court's findings and legal conclusions as to 93-3.

[6] The voluntary dismissal of the state court action was granted without prejudice.

9

The district court's order makes reference to claim preclusion, issue preclusion, and notions of federalism embodied in the Rooker-Feldman doctrine, but none  provides an adequate justification for barring plaintiffs' claim for a permanent injunction of Broward County's licensing ordinance.[7]

The district court found support for the preclusion in Gorin v. Osborne, 756 F.2d 834 (11th Cir. 1985), but the case is inapposite.  Gorin held that a fired state employee could not raise a section 1983 claim stemming from her discharge in federal court when a state court had already affirmed a State Personnel Board

_____

[7] Claim and issue preclusion are often lumped together under the rubric of *res judicata*. See Gjellum v. City of Birmingham, 829 F.2d 1056, 1059 n.3 (11th Cir. 1987).  The Gjellum decision described the two types of preclusion as follows:

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.  This effect is also referred to as direct or collateral estoppel.  Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

Id.  For additional definitions of issue preclusion, see  Kremer v. Chemical Construction Corp., 456 U.S. 461, 466 n.6 , 102 S. Ct. 1883, 1889 n.6 (1982); and Restatement (Second) of Judgments § 27 (1982).
    The district court's order had the effect of totally precluding the adult bookstores' permanent injunction claim, and the language in the order suggests that claim preclusion was what the court had in mind.  The district court wrote that "Plaintiffs' 93-18 *claims* are barred." Vincent v. Broward County, No. 97-7164 at 7 (S.D. Fla. 1998) (Order Granting In Part Defendant's Motion for Summary Judgment and Motion to Dismiss) (emphasis added.) Throughout the order, the court refers to plaintiffs' *claim* as a whole without identifying discrete issues more specifically.  On the other hand, the district court also mentions issue preclusion. The court could have reasoned that, because the Florida state courts considered all of the issues significant to the adult bookstores' permanent injunction claim during the preliminary injunction proceedings, issue preclusion would effectively undermine plaintiffs' ability to make a case for a permanent injunction.

finding that the employee had been negligent and that the discharge was warranted. The Gorin case arose in Georgia, and the circuit panel found it dispositive that the state court's resolution of the case had preclusive effect under Georgia law.  See id. at 837.  "[F]ederal courts give preclusive effect to a state-court judgment whenever the courts of the state from which the judgment emerged would do the same." Richardson v. Miller, 101 F.3d 665, 668 (11th Cir. 1996); see also Gjellum v. City of Birmingham, 829 F.2d 1056, 1060 (11th Cir. 1987).

Under Florida law rulings on an action for a preliminary injunction are generally *not* considered final or conclusive; the denial of a preliminary injunction does *not* preclude the subsequent grant of permanent equitable relief.  See Silver Rose Entertainment v. Clay County, 646 S.2d 246, 248 (Fla. 1st Dist. Ct. App. 1994); Ladner v. Plaza del Prado Condo Ass'n., 423 So. 2d 927, 929 (Fla. 1st Dist. Ct. App. 1987).[8]  Although these Florida cases do not consider whether a ruling on a preliminary injunction could be binding on a subsequent, distinct case, the underlying logic is that temporary injunction rulings are generally not conclusive determinations on the merits; they should not bar a more thorough consideration of a claim when the evidence and legal arguments are better developed.

---

[8] It should be pointed out that Florida's view of the preclusive effect of preliminary injunction decisions is the general view. See, e.g., University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981) (findings of fact and conclusions of law by a court in a preliminary injunction proceeding are not binding at a subsequent trial on the merits).

11

The Florida decisions dealing with the preclusive effect of preliminary injunction rulings generally do not limit their holdings to either claim or issue preclusion. All of the cases actually involve issue preclusion, however, and for good reason. Claim preclusion only bars claims that were actually litigated, or that could and should have been litigated, in a prior proceeding that reached final judgment. See Gjellum, 829 F.2d at 1059-60 (11th Cir. 1987); Restatement (Second) of Judgments §§ 17 & 24 (1982). By definition, preliminary injunction proceedings do not provide an opportunity to litigate permanent injunction claims. After losing their bid for a preliminary injunction, plaintiffs could have continued in state court and sought a permanent injunction, but they could not have litigated their permanent injunction claim in any proceeding that has already occurred.[9] Thus, claim preclusion is inapplicable in this case.

Florida case law does set out a narrow range of circumstances under which the *findings* in a preliminary injunction proceeding would be deemed conclusive. The requisite conditions were not satisfied in this case, however, and issue

---

[9] Gorin does not provide an apt example of claim preclusion, even ignoring the reliance on state law, because the procedural posture was quite different from this case. The State Personnel Board held a full, adversarial proceeding before ruling on the merits of the plaintiff's wrongful discharge claim. Although the state court reviewed the administrative proceeding on an "any evidence" standard, the court's decision was final. Whereas the plaintiffs in this case could have pursued the merits of their claim in the Florida trial court by seeking a permanent injunction, the plaintiff in Gorin could only have taken an appeal.

12

preclusion therefore does not apply either.[10]  The grant or denial of a temporary

injunction is considered binding in Florida if the hearing for the injunction is

"specially set" for the purpose of deciding the merits of a case, and the parties have

a full opportunity to present their case.  See Silver Rose Entertainment, 646 So. 2d

at 248; Ladner, 423 So. 2d at 929.  The Florida District Court of Appeals made

clear that the question before it was simply whether the plaintiffs had made the

standard showing to obtain a preliminary injunction, not whether Broward

County's ordinance was in fact constitutional.  See 3229 N. Federal Highway, Inc.

v. Board of County Comm'rs. of Broward County, 646 So. 2d 215, 222 (Fla. 4th

Dist. Ct. App. 1994).  Although the briefs filed in the Florida courts and the Fourth

District Court of Appeals' decision are thorough, nothing indicates that the trial

court's two hour hearing on the preliminary injunction was intended to decide the

merits of the plaintiffs' permanent injunction claim.

The district court also suggested that the Rooker-Feldman doctrine barred it

from entertaining plaintiffs' challenge to the Broward County licensing ordinance.

According to the Rooker-Feldman doctrine, federal district courts cannot review

---

[10] Broward County cites one case in which a party was precluded from relitigating a factual issue determined in a prior preliminary injunction proceeding.  See Miller Brewing Co. v. Jos. Schlitz Brewing Co., 605 F.2d 990, 995-96 (7th Cir. 1979).  This case is not directly on point, however, because the earlier preliminary injunction proceeding at issue in Miller Brewing was also in federal court.  There was no state law of issue preclusion to apply.

final state court judgments, and cannot consider claims inextricably intertwined with a state court judgment. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S. Ct. 1303, 1311 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S. Ct. 149, 150 (1923); Powell v. Powell, 80 F.3d 464, 466-67 (11th Cir. 1996). Regardless of how intertwined plaintiffs' claims for temporary and permanent injunctions may be, however, the Florida courts' denial of the temporary injunction is not a final or conclusive judgment on the merits of the adult bookstores' First Amendment case. Therefore, Florida's denial of the temporary injunction does not preclude plaintiffs from pressing a claim for a permanent injunction or from litigating the factual and legal issues necessary for making out that claim, and it does not bar a federal court from considering that claim.

B. The Facial Challenge to the Zoning Ordinance

In its findings of fact and conclusions of law after the bench trial, the district court determined that International Eateries of America v. Broward County, 941 F.2d 1157 (11th Cir. 1991), which found Broward County's previous adult business zoning ordinance constitutional, controlled the facial challenge to 93-3.

14

Appellants point out differences between the two ordinances and the litigation of the respective cases, as well as changed circumstances in Broward County. None of these differences alter the applicability of International Eateries. Accordingly, our circuit's precedent leads us to conclude that 93-3 is constitutional on its face.

There are two differences between 93-3 and the zoning ordinance upheld in International Eateries. First, 93-3 eliminates the waiver provision allowing adult businesses with community approval to locate outside of the areas zoned for their use. Second, instead of allowing non-conforming adult businesses to remain at their existing sites, 93-3 gave businesses covered by the ordinance five years to move to an appropriate location. The Constitution, however, does not require either the waiver provision or the "grandfathering" clause for existing non-conforming businesses.[11]

Changes to the geography and demographics of Broward County, and differences in the litigation posture of International Eateries and this case, also are insignificant.[12] For determining whether a previous case provides controlling

---

[11] The International Eateries decision itself strongly suggested that restrictive zoning schemes do not need waiver provisions to pass constitutional muster. See International Eateries, 941 F.2d at 1164. Courts have frequently upheld the application of new zoning regulations to existing adult businesses with an amortization period. See, e.g., Ambassador Books & Video, Inc. v. City of Little Rock, Ark., 20 F.3d 858, 865 (8th Cir. 1994); SDJ v. City of Houston, 636 F. Supp. 1359, 1370 (S.D. Tex. 1986), aff'd, 837 F.2d 1268, 1278 (5th Cir. 1988).

[12] Since 1991 municipalities have annexed large portions of the unincorporated county, taking many of the sites available for adult businesses in 1991 with them. The population also

precedent in a case before the court, the legal strategies and underlying circumstances of the earlier case are less important than the language and holding of the previous decision, and its applicability to the facts of the case before the court.

C. The As-Applied Challenge to the Zoning Ordinance

For First Amendment purposes, courts treat zoning ordinances regulating adult businesses as time, place, or manner restrictions. See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46, 106 S. Ct. 925, 928 (1986). Zoning ordinances that target the social ills associated with adult entertainment are constitutional if they are narrowly tailored to further a substantial government interest and "allow for reasonable alterative avenues of communication." Id. at 50,

---

has decreased. In addition, appellants note that International Eateries involved a different type of plaintiff–adult dancing establishments instead of bookstores. Appellants indicate that nude dancing is only marginally protected by the First Amendment, and suggest that their own activities, more securely covered by the First Amendment, might warrant more robust protection by the courts. International Eateries did not use a diluted test to evaluate the dance clubs' claims, however, but applied the standard time, place, and manner scrutiny that is applicable in this case as well. 942 F.2d at 1161-62. Finally, the appellants in this case point out that the plaintiffs in International Eateries did not question the adequacy of the sites left available for adult businesses under the old zoning ordinance, while that is the central challenge to 93-3. This may be a correct assessment of the plaintiffs' strategies in the two cases, but the court in International Eateries did in fact hold that Broward's zoning ordinance provided "reasonable alternative avenues of communication." Id. at 1164.

106 S. Ct. at 930; see also International Eateries of America, Inc. v. Broward County, Fla., 941 F.2d 1157, 1162 (11th Cir. 1991) (noting that the Supreme Court did not intend "to eliminate narrow-tailoring requirement from time, place, and manner analysis," even though the Renton decision did not explicitly mention the need for narrow tailoring).

The appellants claim that Broward's zoning ordinance, 93-3, does not leave "reasonable alternative avenues of communication." This claim has two components. First, appellants argue that the trial court incorrectly calculated the number of sites available for adult entertainment establishments. Second, appellants argue that the trial court erred in concluding that even this exaggerated number of sites provides adequate opportunities for their First Amendment activities.[13]

1. The Number of Sites Available for Adult Businesses

---

[13] In a final, unrelated argument, appellants challenge the narrow tailoring of the zoning ordinance required under First Amendment time, place, and manner analysis. Appellants claim that the purpose of the ordinance's distance requirements was to avoid a concentration of adult businesses. They also note that five sites preferred by the county as available for adult businesses are within a mile of each other, and three are "on virtually the same street corner." Brief for Appellants at 55. The district court did not address this argument, and neither will we because we find that it is without merit. This court previously found the distance requirements constitutional in International Eateries, 941 F.2d at 1163. Although 93-3 may force many adult businesses into one part of the unincorporated county, requiring the adult venues to locate more than 1,000 feet from each other still effectively limits their density in that part of the county. This in turn may limit the negative secondary effects of the adult businesses.

The district court's calculation of the number of sites available for adult businesses under a zoning law is a factual finding, reviewed only for clear error. See Boss Capital, Inc. v. City of Casselberry, 187 F.3d 1251, 1253 (11th Cir. 1999). On the other hand, the court's methodology in making that calculation–whether the consideration or exclusion of particular factors is appropriate–is a question of law that we consider *de novo*. See id. at 1253-54.

The Supreme Court has not thoroughly explained what factors to consider when determining whether particular sites are reasonable for adult business relocation. Renton suggests that adult businesses should be "on an equal footing with other prospective purchasers and lessees," and it cautions against zoning regulations that have the effect of suppressing or severely restricting access to any sort of protected speech. Renton, 475 U.S. at 54, 106 S. Ct. at 932. Renton also makes clear, however, that commercial viability is not an appropriate consideration. Id. Moreover, the land deemed available for adult businesses in Renton included "'acreage in all stages of development from raw land to developed, industrial, warehouse, office, and shopping space.'" Id. at 53, 106 S. Ct. at 932 (quoting App. to Juris. Statement 28a).

Other circuits have given more definition to the rough outline provided by Renton. In Topanga Press, Inc. v. City of Los Angeles, 989 F.2d 1524, 1532-33

18

(9th Cir. 1993), the Ninth Circuit outlined five rules of thumb for determining whether land is part of the relevant real estate market, and thus considered available for adult uses: First, there must be a genuine possibility that a site will become available for new commercial use within a reasonable time. Second, a site is available if it is reasonably accessible to the public. Third, a site is available if it is in a manufacturing zone with infrastructure such as roads, sidewalks, and lights. Fourth, a relocation site must be appropriate for some commercial business, although it does not have to suit the particular needs of adult businesses. Fifth and finally, commercially zoned plots are considered available.

The Fifth Circuit focused on physical obstacles to development of a site in Woodall v. City of El Paso, 49 F.3d 1120, 1124 (5th Cir. 1995). "[A]n obstacle that can be overcome without incurring unreasonable expense does not make a site unavailable, but an obstacle that cannot reasonably be overcome renders the site unavailable." Id. The court gave the following examples: "[T]he finder of fact may exclude land under the ocean, airstrips of international airports, sports stadiums, areas not readily accessible to the public, areas developed in a manner unsuitable for any generic commercial business, areas lacking in proper infrastructure, and so on." Id. The Woodall court also decided that an owner's

19

unwillingness to rent or sell to an adult business,[14] and the fact that land is currently not available for sale or lease, are irrelevant under <u>Renton</u>. <u>Id.</u> at 1125-26. The Eighth Circuit not only agrees that an owner's willingness to sell or lease to an adult business is irrelevant, but has indicated that the prohibitive cost of developing a site does not factor into the <u>Renton</u> analysis either. <u>See</u> <u>Alexander v. City of Minneapolis</u>, 928 F.2d 278, 283 (8th Cir. 1991). <u>See also</u> <u>D.G. Restaurant Corp. v. City of Myrtle Beach</u>, 953 F.2d 140, 147 (4th Cir. 1991) (commercial desirability of sites in industrial area is irrelevant).

This circuit has not yet spoken on how to determine whether land is available to adult businesses for First Amendment purposes. The case law from the other circuits is helpful, but we do not need to formally adopt or critique the reasoning of <u>Woodall</u> or <u>Topanga</u>.

We can resolve this case with the aid of a few general rules. First, the economic feasibility of relocating to a site is not a First Amendment concern. Second, the fact that some development is required before a site can accommodate an adult business does not mean that the land is, *per se*, unavailable for First Amendment purposes. The ideal lot is often not to be found. Examples of

---

[14] <u>Woodall</u> suggests but does not decide that easements barring adult uses may render a site unavailable under <u>Renton</u>. <u>See</u> <u>Woodall</u>, 49 F.3d at 1127.

impediments to the relocation of an adult business that may not be of a constitutional magnitude include having to build a new facility instead of moving into an existing building; having to clean up waste or landscape a site; bearing the costs of generally applicable lighting, parking, or green space requirements; making due with less space than one desired; or having to purchase a larger lot than one needs.   Third, the First Amendment is not concerned with restraints that are not imposed by the government itself or the physical characteristics of the sites designated for adult use by the zoning ordinance.  It is of no import under Renton that the real estate market may be tight and sites currently unavailable for sale or lease, or that property owners may be reluctant to sell to an adult venue.

The district court concluded in this case that adult businesses could locate at seven to nine sites in unincorporated Broward County under 93-3.  The district court considered the testimony and reports of experts for both the adult bookstores and the County.  This evidence described the characteristics of nine sites the County suggested were available for adult businesses.  For some sites, one would have to purchase multiple parcels of land and reconfigure the parcels.   At some sites, buildings would have to be demolished, and new structures built.  A few of the sites lack sidewalks and appropriate lighting.  Hazardous waste from a car repair facility may contaminate one site.  There is no evidence that any of the land

21

is for sale, and restrictive covenants may forbid the operation of adult entertainment establishments on one parcel. One site with a gravel pit would require substantial landscaping and fill work. Some lots could only accommodate small enterprises, given the requirements for parking lots, green space, and distance setbacks for adult businesses. Finally, a marina occupied one site at the time of trial, and city approval of "flex rezoning" would be necessary before the site could house an adult business.

Plaintiffs argue that these obstacles render all but one of the sites unavailable for adult businesses. Plaintiffs are especially concerned that the county could thwart the establishment of adult businesses at many of the sites by denying or delaying the permits necessary to redivide parcels of land and build commercial buildings.

Clearly, the physical characteristics of a site or the character of current development could render relocation by an adult business unreasonable. See Woodall, 49 F.3d at 1124 (giving land under the ocean, airstrips of international airports, and sports stadiums as examples); Topanga, 989 F.2d at 1532 (same). After our review of the record, however, we cannot say that the district court clearly erred in finding seven to nine sites available for adult uses in unincorporated Broward County. Some of the obstacles to relocating adult

22

businesses in unincorporated Broward County, such as the current unavailability of suitable land on the real estate market, are not of constitutional significance. There is not enough evidence in the record that the physical obstacles to developing sites (the possibility of contamination from a car repair facility and the presence of a gravel lot) are prohibitive. Nor does the record evidence conclusively show that it would be infeasible to fashion lots appropriate for adult businesses through the purchase and division of multiple parcels of land and development in accordance with county safety and landscaping requirements. Finally, appellants' concern about obtaining the necessary permits to redevelop sites for adult businesses is entirely speculative at this time.

2. Adequate Opportunities for Adult Expression

Whether the sites available for adult businesses provide reasonable avenues for communicating the businesses' protected expression is a question of law concerning the ultimate constitutionality of Broward's zoning ordinance. Therefore we review the district court's determination of this issue *de novo*. See Gay Lesbian Bisexual Alliance v. Pryor, 110 F.3d 1543, 1546 (11th Cir. 1997) (constitutionality of a statute is a question of law subject to *de novo* review, while

underlying factual findings are reviewed for clear error); Crawford v. Lungren, 96 F.3d 380, 384 (9th Cir. 1996) (review of challenge to constitutionality of statute regulating sale of adult magazines using the Renton analysis is done *de novo*).

The Supreme Court has not established a rigid test for determining whether zoning laws leave adequate opportunities for expression protected by the First Amendment, but the Court has noted that, because "the scope of relevant zoning authority varies widely across our country, as do geographic configurations and types of commerce among neighboring communities, this issue will doubtless be resolved on a case-by-case basis." Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 78-79, 101 S. Ct. 2176, 2188 (1981) (Blackmun, J., concurring).

In this circuit, we have stated that the analysis should take into account "any factors that may affect whether adult entertainment establishments are on 'equal footing with other prospective purchasers and lessees.'" Boss Capital, Inc. v. City of Casselberry, 187 F.3d 1251, 1254 (11th Cir. 1999) (quoting Renton, 475 U.S. at 54). In Boss Capital, we specifically suggested considering the community's population and size, the acreage available to adult businesses as a percentage of the overall size, the location of available sites, the number of adult businesses already in existence, and the number of adult businesses wanting to operate in the community in the future. See id. In another decision, we suggested considering

24

the "community needs, the incidence of nude bars in other comparable communities, the goals of the city plan, and the kind of city the plan works toward." International Food & Beverage Systems v. City of Fort Lauderdale, 794 F.2d 1520, 1526 (11th Cir. 1986).

In this case, the district court took into account a number of factors before concluding that 93-3 leaves adequate avenues of expression. Most prominently, the court mentioned that the ratio of available sites to square miles in unincorporated Broward County is the same as under the County's former zoning ordinance when it was approved by this court in International Eateries. The district court also noted that nine businesses have satisfied Broward County's demand for adult entertainment over the last few years.[15] More significant to the court, however, was the fact that unincorporated Broward County is being annexed out of existence. As the years go by, there will be fewer and fewer sites for any type of business in the county. The district court refused to rely solely on a rigid formula of available sites-to-population suggested by the plaintiffs,[16] but suggested that in

---

[15] Although, as appellants point out, there are actually a number of other, unlicensed adult venues in Broward County.

[16] This methodology, relying on the ratio of sites to population, was discussed favorably in Centerfield v. St. Petersburg, 969 F. Supp. 1288, 1305 (M.D. Fla. 1997), and with skepticism in Lady J. Lingerie v. City of Jacksonville, 973 F. Supp. 1428, 1438 n.7 (M.D. Fla. 1997).

its view seven sites would provide adequate avenues of expression under such a formula.

Perhaps, the district court could have been more thorough in setting out the factors it did and did not find relevant to the adequacy of the available sites for adult businesses. District courts, however, do not need to provide a checklist of every conceivable consideration. We find the district court's reasoning in this case persuasive. We too find it significant that the ratio of sites to land area in unincorporated Broward County was found acceptable in <u>International</u> <u>Eateries</u>. We also consider the correlation of available sites to existing adult businesses important.[17] Finally, the fact that unincorporated Broward County is shrinking makes this case unique. We conclude that Broward County's zoning ordinance does not deprive the appellant adult bookstores of reasonable avenues of communication.

## III. CONCLUSION

[17] The Ninth and the Fifth Circuits have focused heavily on whether the zoning plan leaves enough available sites to satisfy the demand for adult business locations, or as the Ninth Circuit put it, whether the available "acreage provides the Adult Businesses with a reasonable opportunity to relocate." <u>See</u> <u>Woodall</u>, 49 F.3d at 1126 (5th Cir. 1995); <u>Topanga Press</u>, 989 F.2d at 1532-33 (9th Cir 1993) (the number of sites available for adult businesses under the new zoning regime must be greater than or equal to the number of adult businesses in existence at the time the new zoning regime takes effect).

We AFFIRM the district court ruling that Broward County's zoning ordinance, 93-3, is constitutional both facially and as applied. We REVERSE the order granting summary judgment on plaintiffs' challenge to Broward County's licensing ordinance, 93-18, and REMAND for further proceedings in accordance with this opinion.