File Name: 05a0752n.06
Filed: August 25, 2005

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BRONCO'S ENTERTAINMENT, LTD., and RAWSONVILLE LAND CO., INC., | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| CHARTER TOWNSHIP OF VAN BUREN, MICHIGAN LIQUOR CONTROL COMMISSION, and JACQUELINE STEWART, | ) ) ) ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) ) | |

Before:     **NELSON** and **COOK**, Circuit Judges; **WEBER**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge.  This appeal represents the latest round in a

long-running dispute over the regulation of sexually oriented businesses in the Charter

Township of Van Buren, Michigan.  The plaintiffs sued the township and the Michigan

Liquor Control Commission on the theory that certain licensing and zoning regulations

adopted by these governmental bodies violate the First and Fourteenth Amendments to the

United States Constitution.  The district court initially dismissed the action for lack of

standing, but our court reversed the dismissal.  On remand the district court entered judgment

---

[*]The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

for the defendants; again the plaintiffs have appealed. We shall affirm the district court's judgment in part and reverse it in part.

We are not persuaded that the township's site plan and "special" approval requirements operate as prior restraints that violate the First Amendment. Site plan approval is a generally applicable requirement that does not seek to limit speech, and the "special" approval process is subject to procedural safeguards that adequately protect against censorship. Nor are we persuaded that the Liquor Control Commission's requirement of a "topless activity permit" affects this case.

We are satisfied, moreover, that the township's geographic restrictions on sexually oriented businesses are aimed at the secondary effects of such businesses, are narrowly tailored to serve a substantial government interest, and leave open alternative channels for erotic expression. And we see nothing unconstitutional about a 182-day land use moratorium adopted by the township; the moratorium was put in place for a proper purpose and not for suppression of the plaintiffs' speech.

We conclude, however, that the township's system of licensing sexually oriented businesses is unconstitutional insofar as it authorizes discretionary denial of a license without providing for accelerated judicial review. Absent an appropriate judicial review procedure, we are compelled to sever and invalidate the discretionary-denial feature of the licensing ordinance. The rest of the ordinance will be left intact.

I

The pertinent factual background is outlined in our earlier opinion. See *Bronco's Entertainment, Ltd. v. Charter Township of Van Buren*, 29 Fed. Appx. 310, 311-12 (6th Cir. 2002). In brief, the plaintiffs want to open a topless bar on a site that is ineligible for such use under the township's current zoning regulations. The plaintiffs sued the township, the Liquor Control Commission and the Chair of the Commission on the theory that the township's zoning regulations and the state and local procedures for licensing sexually oriented businesses are unconstitutional. The plaintiffs also challenged the constitutionality of the township's 182-day moratorium on the acceptance of new site plans — a moratorium that prevented the plaintiffs from seeking approval under a more favorable zoning scheme.

After this court's reversal of the ruling on standing, the district court entered judgment on the merits in favor of the defendants.[1] The court held (1) that the township's zoning regulations allow operation of sexually oriented businesses at an adequate number of alternative sites within the township; (2) that the township's zoning and licensing regulations are narrowly tailored to protect the public from harmful secondary effects of sexually oriented businesses; (3) that the township's licensing requirements (including requirements for site plan approval and "special" approval) do not constitute unlawful prior restraints on

_____

[1]The plaintiffs refer to the district court's decision as a summary judgment, but the court did not in fact act under Rule 56, Fed. R. Civ. P. The court declined to hold an evidentiary hearing only because the parties agreed that the existing record was sufficient. The court ordered the parties to file proposed findings of fact, and it resolved disputed issues by making its own factual findings.

protected speech; (4) that the state's procedure for issuing a "topless activity permit" is constitutional; and (5) that the township's moratorium on consideration of new site plans did not violate the First or the Fourteenth Amendment. The plaintiffs perfected a timely appeal.

II

The challenged regulations can be grouped into three categories: (a) licensing and approval regulations at the state and local levels; (b) geographic zoning regulations; and (c) the township's moratorium on consideration of new site plans. We shall address these categories seriatim.

A

The plaintiffs maintain that the challenged licensing and approval regulations constitute unlawful prior restraints on protected speech.[2] "A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials." *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001), *cert. denied*, 535 U.S. 1073 (2002). Prior restraints are presumptively invalid because of "the risk of censorship associated with the vesting of unbridled discretion in government officials" and "the risk of indefinitely suppressing permissible speech when a licensing law

---

[2]The defendants have not challenged the proposition that the commercial display of bare-breasted women involves constitutionally protected "speech." Such a challenge, as reasonable as it might otherwise seem, would fly in the face of binding precedent. See *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991) (plurality opinion) ("nude dancing . . . is expressive conduct within the outer perimeters of the First Amendment").

fails to provide for the prompt issuance of a license." *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000) (internal quotation marks omitted).

To overcome the presumption of invalidity, a scheme for licensing sexually oriented businesses must incorporate two procedural safeguards. See *Deja Vu of Nashville*, 274 F.3d at 400-01; *Nightclubs, Inc.*, 202 F.3d at 890. First, the decision whether to issue a license must be made within a specified — and brief — time period, and the status quo must be maintained during that period and during the course of any judicial review. See *Deja Vu of Nashville*, 274 F.3d at 400-01. Second, there must be an assurance that a judicial decision, if sought by the applicant, can be obtained seasonably. See *City of Littleton v. Z. J. Gifts D-4, L.L.C.*, 124 S. Ct. 2219, 2224 (2004); *Deja Vu of Nashville*, 274 F.3d at 400-01.

The latter safeguard does not require special rules for accelerated review if the licensing scheme "applies reasonably objective, nondiscretionary criteria" and "does not seek to censor content." *Littleton*, 124 S. Ct. at 2225-26; see *Deja Vu of Cincinnati, L.L.C. v. Union Township Board of Trustees*, 411 F.3d 777, 787-88 (6th Cir. 2005). In those circumstances, "ordinary court procedural rules and practices . . . provide reviewing courts with judicial tools sufficient to avoid delay-related First Amendment harm." *Littleton*, 124 S. Ct. at 2224-25, 2226; *Deja Vu of Cincinnati*, 411 F.3d at 787.

If a licensing scheme involves the application of subjective standards, rules requiring a speedy judicial decision may be necessary. See *Freedman v. Maryland*, 380 U.S. 51, 59-60 (1965). In *Freedman* the Supreme Court "considered a [motion picture permitting] scheme

with rather subjective standards . . . where a denial [of a permit] likely meant complete

censorship." *Littleton*, 124 S. Ct. at 2225. The characteristics of that scheme "necessitated

that strict time limits be placed on judicial review." *Deja Vu of Cincinnati*, 411 F.3d at 787.

With these principles in mind, we turn to the licensing and approval regulations that

are challenged in the case at bar. The local regulations require site plan approval, "special"

approval, and issuance of a sexually oriented business license. The state regulation requires

issuance of a "topless activity permit" under certain circumstances.

1

Except for detached one- and two-family dwellings, site plan approval is required for

all new land uses in the township. See Zoning Ordinance, Charter Township of Van Buren,

Michigan § 20.341. After an administrative review to ensure completeness and consistency

with zoning requirements, site plans are placed "on the Planning Commission agenda for

review and action at the earliest available meeting." *Id.* Section 20.343 of the township's

zoning ordinance gives a detailed list of the data that must be included in a site plan, and §

20.347 sets forth factors that "the Planning Commission shall consider" when reviewing a

plan. The factors enumerated in § 20.347 include such matters as "[t]he location and design

of driveways," "traffic circulation features within the site and location of parking areas," and

"[t]he installation, erection, and construction of transmission systems for essential services."

*Id.* § 20.347.

The record contains uncontroverted evidence that review and approval of a site plan is a routine, nondiscretionary function. Gary Wilson, a member of the Planning Commission's staff, testified as follows:

> "[O]nce a completed application is received and reviewed, it has to appear before the planning commission. We have to, by state statute, grant or deny approval, and if the site plan meets the requirements of the ordinance we must grant approval. We have no discretion in that. It's essentially an administrative function.
>
>      \*   \*   \*
>
> As stated in the ordinance, the ordinance requirements for site plan review are very specific, very, it's laid out in a section, a clear section in the ordinance. The information is normal and common. It's factual information that has to be in a plan and if it's on there and it meets the ordinance, it has to be approved."

The township's requirement of site plan approval does not, in our view, constitute a prior restraint on speech, and it need not incorporate the procedural safeguards described above. The ordinance is applicable to all commercial uses, not just those that involve protected speech, and it does not grant government officials discretion to allow or forbid expressive activity. As the Supreme Court has explained,

> "laws of general application that are not aimed at conduct commonly associated with expression and do not permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken, carry with them little danger of censorship. For example, a law requiring building permits is rarely effective as a means of censorship. . . . [S]uch laws provide too blunt a censorship instrument to warrant judicial intervention prior to an allegation of actual misuse." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 760-61 (1988).

Given Mr. Wilson's testimony, we are satisfied that the township's procedure for site plan approval poses little, if any, risk of censorship. It does not, therefore, warrant the protections that must accompany a scheme directly regulating speech.

2

"Special" approval is required for sexually oriented businesses and other uses that are enumerated in the township's zoning ordinance. See Zoning Ordinance, Charter Township of Van Buren, Michigan §§ 20.653, 20.763, 20.792a. An application for "special" approval must accompany the applicant's site plan. See *id*. §§ 20.390(C), 20.878(c). The Planning Commission is required to publish notice, hold a public hearing on the application, and then recommend denial, approval, or approval with conditions. See *id.* § 20.390(D), (E). Ordinarily, a special use must satisfy nine enumerated criteria before the Commission may recommend its approval. See *id.* § 20.390(F).

The Planning Commission's recommendation is forwarded to the township's Board of Trustees. See *id.* § 20.390(E). At least five but no more than 15 days before the Board considers the matter, it must publish notice of the application. See *id.* § 20.878(d). Notice must also be sent by mail or delivered in person to the owner of the property under consideration and to owners and occupants of property located within 300 feet of that property. See *id.* At the request of any of these persons, or upon the Board's own initiative,

a public hearing will be held. See *id.* § 20.878(e). The Board is forbidden to approve the special use unless the nine enumerated criteria are met. See *id.* §§ 20.390(F), 20.878(f).

These special approval procedures are modified in two ways when the proposed use is a sexually oriented business. First, more restrictive time limits apply. The Planning Commission must conduct its public hearing within 60 days of receiving the completed application, and it must make a recommendation at its next regularly scheduled meeting after the hearing. See *id.* § 20.420(1)(d). (The record reflects that the Planning Commission meets twice each month.) The Commission must forward its recommendation to the Board of Trustees within 60 days, and the Board must grant or deny special approval "at this meeting." See *id.* It seems to us that the phrase "this meeting" refers to a Board meeting at which the Planning Commission's recommendation is considered, and we interpret the ordinance as requiring such a meeting to occur within 60 days of the Commission's making its recommendation. Failure of the township to comply with any of these time limits "shall be deemed to constitute granting of special approval." *Id.*

Second, the nine criteria that must normally be met for special approval do not apply to sexually oriented businesses. See *id.* §§ 20.763(h), 20.792a(a), 20.878(g). Instead, the Board may only consider whether the proposed sexually oriented business complies with geographic requirements set forth in the zoning ordinance. See *id.* §§ 20.878(g), 20.420(3).[3]

---

[3]These modifications of the township's special approval procedures were made after a Michigan appellate court determined that the ordinary procedures were unconstitutional when applied to sexually oriented businesses. See *BRK, Inc. v. Charter Township of Van*

As we have said, special approval is not required for all commercial uses. Insofar as it directly regulates expressive activity, the township's special approval requirement poses a risk of censorship. The procedural safeguards described above — a brief time limit for the administrative determination, preservation of the status quo, and a mechanism to assure availability of a prompt judicial decision — must therefore be in place.

We think that the time limits for special approval of a sexually oriented business are short enough to pass constitutional muster. The maximum allowable time between the township's receipt of a completed application and the Board's decision is 135 days (assuming a maximum of 15 days between the hearing before the Planning Commission and the Commission's making a recommendation). This strikes us as a reasonable length of time, given the nature of the decision to be made and the type of speech that is at issue. Special approval depends on compliance with zoning regulations, as mentioned above, and surveying or other fieldwork might therefore be necessary before the Board can approve a proposed site. Moreover, public hearings must be held. The resulting delays do not, in our view, impose an undue hardship on the "speakers" who are awaiting approval. The "speech" that is being temporarily silenced, after all, is a type of expression in which "society's interest . . . is of a wholly different, and lesser, magnitude than the interest in untrammeled political

*Buren*, Nos. 163835, 170704 (Mich. Ct. App. Mar. 15, 1996) (unpublished). The principal defects in the unmodified procedures were the lack of specified time limits and the subjectivity of the criteria for granting approval. See *id.*, slip op. at 9-11.

debate." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 294 (2000) (plurality opinion) (internal quotation marks omitted).

The status quo is preserved during the special approval process and any subsequent judicial proceedings. See *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 225 (6th Cir.) ("The status quo for a business seeking a permit to begin operating a sexually oriented business . . . is non-operation."), *cert. denied* 516 U.S. 909 (1995).

The ordinance does not establish special rules for an accelerated judicial decision, but such rules are unnecessary under *Littleton*. As we shall see in section II.B, the zoning requirements that must be satisfied for special approval to be granted are objective and nondiscretionary. Ordinary court rules are constitutionally sufficient, therefore, "as long as the courts remain sensitive to the need to prevent First Amendment harms and administer those procedures accordingly." *Littleton*, 124 S. Ct. at 2224. Michigan has rules that provide for expeditious granting of injunctive relief, M.C.R. 3.310, "speedy hearing[s]" in actions seeking declaratory relief, M.C.R. 2.605(D), expedited trials, M.C.R. 2.501(B), and accelerated appellate review, M.C.R. 7.101(N)(4). The plaintiffs have not shown that Michigan courts fail to apply these procedures when necessary to protect First Amendment rights. Accordingly, we are not persuaded that the township's special approval requirement is constitutionally deficient.

3

In addition to the requirements for site plan approval and special approval, the township requires the owner or operator of a sexually oriented business to obtain a license before commencing operations. See Code of Ordinances, Charter Township of Van Buren, Michigan § 22-402. To obtain a license, the owner/operator must submit an application to the township clerk. See *id.* § 22-403. The clerk has 10 business days to determine whether the application is complete. See *id.* If it is, the clerk has four business days to forward the application to any two of the three elected township officials. See *id.* These officials must decide within 30 business days whether to approve a license. See *id.* Within that 30-day period, "written reviews shall be prepared by the chief of police, fire department, and building department." See *id.*

Subsection 22-403(i) of the township's code of ordinances identifies nine bases on which a license to operate a sexually oriented business may be denied. These bases are as follows:

> "(1) An applicant is under 18 years of age.
>
> (2) An applicant is overdue in his or her payment to the Township of taxes, fees, fines, or penalties assessed against or imposed in relation to a sexually oriented business.
>
> (3) An applicant has failed to provide information reasonably necessary for the issuance of the license or has falsely answered a question or request for information on the application forms.

(4) An applicant has been convicted of a violation of a provision of this section, other than the offense of operating a sexually oriented business without a license, within 2 years immediately preceding the filing of the application. . . .

(5) The premises to be used for the sexually oriented business has not been approved by the health department, fire department, or building official; or the premises is not in compliance with applicable laws and ordinances.

(6) The license fee required by this section has not been paid.

(7) An applicant has owned, operated, or been employed in a sexually oriented business in a managerial capacity within the preceding 12 months and has demonstrated an inability to operate or manage a sexually oriented business premises in a peaceful and law-abiding manner.

(8) An applicant has a record of conviction for an offense involving gambling, narcotics, prostitution, pandering, pornography, public indecency, sexual assault, or any violation of any provision of this article within the preceding 2 years. . . .

(9) The applicant is not in compliance with applicable zoning ordinances." *Id.* § 22-403(i).

In addition, subsection 22-403(j) authorizes denial of a license if "the chief of police determines that the applicant is presently unfit to operate a sexually oriented business due to the applicant's overall criminal record, regardless of the date of any criminal conviction." *Id.* § 22-403(j). In making this determination, "the chief of police shall consider the following factors:

"(1) The extent and nature of past criminal activities;

(2) The age at the time of the commission of the crime;

(3)     The amount of time that has elapsed since the last illegal activity;

(4)     The conduct and work activity prior to and following the illegal activity;

(5)     Evidence of any rehabilitation or rehabilitative effort while incarcerated or following release; and

(6)     Other evidence of present fitness, including letters of recommendation from prosecution, law enforcement, and correctional officers who prosecuted, arrested, or had custodial responsibility for that person, the sheriff and chief of police in the community where the applicant resides, and any other persons in contact with the applicant." *Id.*

If the township denies an application for a license, the township has 30 business days within which to seek a declaratory judgment approving the denial. See *id.* § 22-406. The applicant "may, at any time, seek prompt judicial review of any act or failure to act by the Township" in connection with an application for a license. *Id.*

We believe that the time period within which the township must grant or deny an application for a license — a total of 44 business days, if the clerk uses the maximum allowable time to review and forward the application — is sufficiently brief. As with special approval, the status quo is preserved for an applicant seeking to open a new sexually oriented business.[4]

_____

[4]The licensing ordinance might not preserve the status quo for some other applicants. We can find no provision allowing sexually oriented businesses that were in operation at the time the ordinance became effective to continue operating while applying for a license. Nor is there a provision allowing continued operation during judicial review of a decision to suspend or revoke, or not to renew, a license. These issues are not before us here, obviously.

We are not satisfied, however, that the licensing ordinance assures the requisite availability of a prompt judicial decision. Although most of the bases for denial of an application are objective, two of them call for an exercise of discretion by government officials. First, § 22-403(i)(7) requires a judgment as to whether an applicant who has been connected with a sexually oriented business during the past year "has demonstrated an inability to operate or manage a sexually oriented business premises in a peaceful and law-abiding manner." (In the case at bar the plaintiffs' principal has operated other sexually oriented businesses.) In *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220 (6th Cir. 1995), we held that an almost identical provision "vest[ed] unbridled discretion in the hands of" the official making that judgment. See *id*. at 227. Second, § 22-403(j) requires an assessment of the applicant's "fitness" by the chief of police. The ordinance lists factors that the police chief must consider, but the assessment is ultimately a subjective one.

It follows from this that ordinary court rules are not sufficient "to prevent undue delay resulting in the unconstitutional suppression of protected speech." *Deja Vu of Cincinnati*, 411 F.3d at 787 (internal quotation marks omitted). Because of the discretion it grants to governmental officials, the township's licensing scheme requires special rules that guarantee an "unusually speedy judicial decision." *Littleton*, 124 S. Ct. at 2226; see *Freedman*, 380 U.S. at 59-60; *Deja Vu of Cincinnati*, 411 F.3d at 787. No such rules are provided in the ordinance or by state law.

But this does not mean that the township's licensing ordinance should be struck down in its entirety. The ordinance contains a severability clause, under which "[e]very word, sentence, clause and provision . . . is hereby declared to be severable, and if any word, sentence, clause, provision or part thereof is declared to be invalid by a court of competent jurisdiction, the remaining provisions shall not be affected." Code of Ordinances, Charter Township of Van Buren, Michigan § 22-408. If it is possible to do so, we must "give effect to the . . . severability clause so as not to invalidate the entire [ordinance]." *Deja Vu of Nashville*, 274 F.3d at 389. We see no reason not to give effect to the severability clause here. See *Jott, Inc. v. Charter Township of Clinton*, 569 N.W.2d 841, 855 (Mich. Ct. App. 1997) (holding that invalid portions of an ordinance should be severed when "the remaining, valid portions are sufficiently independent and complete" and consistent with the intent of the ordinance). With §§ 22-403(i)(7) and 22-403(j) removed, the ordinance satisfies the requirements of the First Amendment.

4

Section 916 of Michigan's Liquor Control Code prohibits certain licensees from allowing "topless activity" on licensed premises without a "topless activity permit" issued by the Liquor Control Commission. See Mich. Comp. Laws § 436.1916. A permit will not be issued without the approval of the Liquor Control Commission, "the local legislative body

of the jurisdiction within which the premises are located,"[5] and "[t]he chief law enforcement officer of the jurisdiction within which the premises are located or the entity contractually designated to enforce the law in that jurisdiction." *Id.*

The plaintiffs correctly point out that § 916 sets forth no standards or time limits for the approval and issuance of a topless activity permit. In circumstances other than those presented here, the absence of standards and time limits might warrant a judicial determination that the statute is an unconstitutional prior restraint.

By its terms, however, § 916 does not require licensees in Van Buren Township to obtain a topless activity permit. The permit requirement applies only to "on-premises licensees located in counties with a population of 95,000 or less." Mich. Comp. Laws § 436.1916(3); see *Ken-N.K., Inc. v. Vernon Township*, 18 Fed. Appx. 319, 322 (6th Cir. 2001). See also *Charter Township of Van Buren v. Garter Belt, Inc.*, 673 N.W.2d 111, 122-23 (Mich. Ct. App. 2003) (quoting the legislative history of § 916), *appeal denied*, 682 N.W.2d 86 (Mich.), *cert. denied*, 125 S. Ct. 620 (2004). Van Buren Township is situated in Wayne County, which has a population in excess of 95,000. See *Garter Belt, Inc.*, 673 N.W.2d at 121. Accordingly, the plaintiffs in this case are not subject to the topless activity permit requirement of § 916. The statute might restrain other persons' speech in other counties, but the plaintiffs cannot assert third parties' First Amendment rights in a challenge based on the

---

[5]Approval by the local legislative body is not required in cities with a population of 1,000,000 or more. See Mich. Comp. Laws § 436.1916(6)(b).

lack of procedural safeguards. See *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 835 (6th Cir.) ("[P]laintiffs may not assert third party standing in every First Amendment facial challenge; rather plaintiffs may only do so in vagueness and overbreadth challenges"), *cert. denied*, 125 S. Ct. 98 (2004).

B

The plaintiffs' next contention is that the township's zoning ordinance violates the First Amendment by unduly restricting expressive activity. The ordinance prohibits operation of a sexually oriented business within 1,000 feet of a church, a school, a residential zoning district, a lot or parcel in residential use, a public park, a child care facility, or another sexually oriented business. It also prohibits sexually oriented businesses from being located within 500 feet of designated highways and thoroughfares. Finally, the ordinance allows sexually oriented businesses only in districts zoned for "general industrial" or "airport" uses, and not in "general business" districts.

An ordinance that imposes geographic restrictions on sexually oriented businesses is constitutional if (1) the restrictions are aimed at secondary effects of such businesses rather than the content of the expression occurring there, (2) the restrictions are narrowly tailored to serve a substantial government interest, and (3) alternative channels of expression remain available. See *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 796 (6th Cir. 2004) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986)).

The district court found that the township adopted the challenged ordinance to combat the secondary effects of sexually oriented businesses rather than to suppress erotic expression. The township relied on memoranda prepared by McKenna Associates, Inc., a community planning and urban design firm, which cited studies showing that sexually oriented businesses are associated with increased crime rates and reduced property values, among other societal harms. A municipality is not required to "conduct new studies or produce evidence independent of that already generated by other cities to demonstrate the problem of secondary effects, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Erie*, 529 U.S. at 296 (plurality opinion) (citation and internal quotation marks omitted); see also *Executive Arts Studio*, 391 F.3d at 796. The McKenna memoranda were therefore sufficient to support the township's adoption of the ordinance, and we see no error in the district court's finding on this score.

It seems clear, moreover, that the challenged ordinance is narrowly tailored to serve a substantial government interest. The importance of the township's interest in combating the secondary effects of sexually oriented businesses is "not debatable." *Wojcik v. City of Romulus*, 257 F.3d 600, 614 (6th Cir. 2001); see also *Erie*, 529 U.S. at 296 (plurality opinion) ("The asserted interest[] . . . of combating the harmful secondary effects associated with nude dancing [is] undeniably important."). And the ordinance applies only to "that category of establishments shown to produce the unwanted secondary effects," *i.e.*, sexually oriented

businesses. *Executive Arts Studio*, 391 F.3d at 796 (internal quotation marks and brackets omitted). The covered businesses are delineated in the ordinance, and the plaintiffs have never argued that the ordinance's reach extends to mainstream bookstores or other establishments that are unlikely to create harmful secondary effects.

The plaintiffs suggest that the ordinance is not narrowly tailored because its geographic restrictions are more stringent than those that were applied to sexually oriented businesses under a previous ordinance. The suggestion misapprehends the nature of the "narrowly tailored" test in this context. A content-neutral regulation, such as the township's ordinance, need not be less restrictive than other possible regulations; it need only refrain from "burden[ing] substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). That test is met in the case at bar, given that the ordinance applies only to expression occurring in sexually oriented businesses and, as we are about to explain, preserves a substantial number of channels for such expression.

The record supports the district court's finding that numerous channels of expression are available to sexually oriented businesses in the township. The township presented detailed maps and other evidence demonstrating that 48 sites could be used for sexually oriented businesses under the current geographic restrictions and that 27 of these sites are "easily developed." (An "easily developed" site, according to a township witness, is one that is predominantly vacant, is not a wetland, has road access, and has utilities in place or

reasonable access to utilities.)  The township presented additional evidence, in the form of an affidavit executed by a real estate appraiser and broker, that the physical characteristics of these sites and their proximity to existing utility lines put them within the relevant real estate market.  There was evidence, moreover, that an owner/operator of sexually oriented businesses has expressed interest in developing such a business in the township's airport district.

The plaintiffs presented countervailing evidence, but we see nothing in it that should have compelled the district court to reject the township's position.  To the contrary, significant portions of the plaintiffs' evidence seem to have been based on misapprehensions of fact or law.  One of the plaintiffs' witnesses assumed, for example, that parcels situated within 500 feet of a major thoroughfare would be disqualified in their entirety from use by sexually oriented businesses.  But the township showed that a parcel can be divided to create a "flag lot" that is set back 500 feet from an adjacent road.  The zoning ordinance expressly excludes access easements and access strips from its separation requirements so as to allow for such division.  See Zoning Ordinance, Charter Township of Van Buren, Michigan § 20.420(3)(d)(7).

Another witness assumed that alternative sites for sexually oriented businesses must be suitable for "generic commercial" development rather than industrial uses.  But the Supreme Court has made it clear that alternative sites need not be viable commercial properties.  See *Renton*, 475 U.S. at 53-54.  As the Eleventh Circuit observed, "the land

deemed available for adult businesses in *Renton* included acreage in all stages of development from raw land to developed, industrial, warehouse, office, and shopping space." *David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1334 (11th Cir. 2000) (internal quotation marks omitted). See also *Z. J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 688 (10th Cir.) (upholding an ordinance that allowed sexually oriented businesses in industrial zones only), *cert. denied*, 525 U.S. 868 (1998).

The plaintiffs' witnesses also discounted certain sites because the sites are occupied or because the current owners might be unwilling to sell to a sexually oriented business. Under *Renton*, these factors are irrelevant. See *David Vincent, Inc.*, 200 F.3d at 1335; *Woodall v. City of El Paso*, 49 F.3d 1120, 1125-26 (5th Cir.), *cert. denied*, 516 U.S. 988 (1995).

Considering the entire record in the light of the applicable legal principles, we cannot say that the district court committed clear error in accepting, as it did, the township's evidence that 27 "easily developed" sites are available to sexually oriented businesses. And we agree with the district court's conclusion that 27 sites — roughly one for every 900 residents of the township — provide adequate alternative channels for expression of the sort proposed by the plaintiffs. The plaintiffs have offered no persuasive argument to the contrary.

C

The plaintiffs' final challenge is to the township's resolution suspending for 182 days "the submission or receipt of projects which would require site plan review, rezoning petitions, housing developments . . . , special approval uses, and the like." Those 182 days were to be used for updating the township's master plan, revising its zoning regulations, and otherwise "pursu[ing] the township strategy to create a premier community." The resolution prevented the plaintiffs from seeking site plan review and special approval before the township adopted the licensing scheme and zoning regulations that are at issue here. It is undisputed, however, that the township did not know about the plaintiffs' plans to open a topless bar when it adopted the resolution.

The plaintiffs contend that the 182-day moratorium violated their due process and First Amendment rights. We disagree. The moratorium was generally applicable, was not intended to suppress speech, and was of a reasonably short duration. Such "interim development controls" are "used widely among land-use planners." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 337-38 (2002). They do not constitute prior restraints on speech, nor do they violate the Due Process Clause so long as they are undertaken in good faith. See *Phillips v. Borough of Keyport*, 107 F.3d 164, 181 (3d Cir.), *cert. denied*, 522 U.S. 932 (1997). We have no basis on which to question the township's good faith here.

At oral argument, the plaintiffs' attorney suggested that the moratorium was adopted in violation of state law. "A violation of state law," however, "is not a denial of due process

. . . ." *Pro-Eco, Inc. v. Board of Commissioners of Jay County, Indiana*, 57 F.3d 505, 514

(7th Cir.) (citation and internal quotation marks omitted), *cert. denied*, 516 U.S. 1023 (1995).

The judgment of the district court is **AFFIRMED** in part and **REVERSED** in part,

and the case is **REMANDED** for entry of an order consistent with this opinion.