**UNIVERSITY BOOKS AND VIDEOS, INC., and related cases,**
**Plaintiffs,**

v.

**MIAMI–DADE COUNTY, FLORIDA,**
**a Body Politic, Defendant.**

No. 00–3012–CIV, 00–1229–CIV, 00–3562–CIV, 00–3563–CIV, 00–3566–CIV, 00–3567–CIV, 00–3568–CIV, 00–3722–CIV, 00–3882–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 25, 2001.

Clyde DeWitt, Weston Garrou & DeWitt, Los Angeles, CA, Nathaniel L. Barone, Jr., Joseph F. Lopez, Carol Gables,

FL, for University Books & Videos', Inc., Bird Street Corp., 14907 SN Corp.

Roger J. Schindler, Simon Schindler & Sandberg, Miami, FL, for Perrine Books, Inc., Sun Beach Video, Inc., Kendall Book & Video, Inc., Angel T. Enterprises, Inc., 167th Street Corp., Gold Coast Book & Video, Inc., James T. Robinson, Prime Time Book and Video, Inc., 114 Biscayne, Inc., KW Liquors, Lil Abner's Corp., 3797 Liquors, Inc.

Barry Leonard Halpern, Barry L. Halpern, Law Office, Coral Gables, FL, for Always Hot, Adult Media Corp. Miami Factor, Inc., 7351 XZ, Inc.

Teddy Lee Montoto, Sutton & Montoto, Miami, FL, for M.P.B., Inc., Gastorkicks, Inc., Clearwater Factor, Inc.

Luke Lirot, Tampa, FL, for Miami Factor, Inc. and Clearwater Factor, Inc.

John Darrell McInnis, David Stephen Hope, Dade County Attorney's Office, Miami, FL, for Miami-Dade County.

## ORDER

GRAHAM, District Judge.

The Defendant, Miami–Dade County (the "County"), like many other municipalities across the Country, has stated its interest in stemming the unwanted secondary effects of adult night clubs and adult book and video stores. To effectuate this interest, the County enacted various ordinances—including Miami–Dade County Code ("MDCC" or the "Code") § 33–255.1, a zoning ordinance which restricts the locations where adult night clubs and adult book and video stores may operate (the "Zoning Ordinance").

The County's real and compelling interest in limiting the secondary effects associated with adult businesses is now in conflict with another equally compelling and constitutionally protected interest, the First Amendment interest in free speech.

These competing interests are now before this Court in the form of a facial challenge to the Zoning Ordinance. The Court does not, however, have to decide whether each interest is important or deserving of protection. The answer to this question has been decided in the affirmative by many other courts.[1] By agreement of the parties, the only issue before this Court is whether the County's interest in limiting the secondary effect of adult businesses, as effectuated by the Zoning Ordinance, leaves open reasonably adequate alternatives to communication such that the interest of free speech is protected.

The Court finds that the Zoning Ordinance does not leave open reasonably adequate alternatives to communication. The available sites in the BU–3 zone—the only area available for adult businesses to locate as of right—are inadequate to allow for free expression. The sites which are located in the Industrial (IU) zone are also inadequate because they are not available as a matter of right, but only with a public hearing. Therefore, the Zoning Ordinance is unconstitutional.

## FINDINGS OF FACT

I.  The History of Adult Use Zoning

On October 1, 1991, the County enacted Ordinance 91–112, which added § 33–255.1 to the Code. Ordinance 91–112 was entitled: "Zoning Regulation of Adult Theaters, Adult Night Clubs, Adult Video Stores and Massage Establishments." This ordinance was the first County ordinance to impose special zoning restrictions on bookstores, video stores and entertainment facilities which offered "adult" materials and entertainment. It provided that adult bookstores and video stores,[2] adult

---

1.  See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); International Eateries of America, Inc. v. Broward County, Fla., 941 F.2d 1157 (11th Cir.1991); Hickerson v. City of New York, 146 F.3d 99, 104 (2d Cir.1998).

2.  "Adult bookstore" is defined to include "any business engaged in displaying, distributing, bartering, renting and selling printed matter, pictures, films, graphic and other materials which activity requires the exclusion of minors pursuant to Chapter 847, Florida Statutes, unless such activity comprises no more than fifteen (15) percent of the total floor area

theaters, adult night clubs [3] and massage establishments (collectively "adult businesses") could locate only in a BU–3 zone,[4] and further required them to be at least 1,000 feet from any private or public school, church, and any other adult uses, and at least 500 feet from any residentially zoned district. Each of the twenty four (24) Plaintiffs operate adult businesses in unincorporated Miami–Dade County, except Plaintiff Always Hot which is presently seeking to open such an establishment.

Each of Plaintiffs' businesses failed to meet the requirements of Ordinance 91–112 because they were not located in a BU–3 zone and were not at least 1,000 feet from any private or public school, church and any other adult uses, and at least 500 feet from any residentially zoned district. However, the County allowed Plaintiffs to continue operating their adult businesses as lawful nonconforming uses.

On January 16, 1996, the County enacted Ordinance 96–12 which amended § 33–255.1. Pursuant to Ordinance 96–12, none of Plaintiffs' adult businesses could have remained at their present locations after January 26, 1999, unless they were granted either a variance from the Department of Planning and Zoning, or a variance or a special exception from the Miami–Dade County Community Zoning Appeals Board. ("CZAB") If they failed to obtain a variance or special exception, Plaintiffs' adult businesses were required to move to either:

    I. A location in a BU–3 zone more than 660 feet from the nearest RU and EU zoning districts and more than 1,000 feet from the nearest private school, public school, church, public park, public library, day care center, nursery for children, as well as being more than 1,000 feet away from any other adult bookstore, adult theater, adult night club, adult video store, massage establishment, adult modeling establishment or encounter studio, as those terms are defined in Ordinance 96–12; or

    II. With the approval of the CZAB, to an IU [5] (industrial) zone location, subject to the same distance requirements as above.

In 1996, most of the Plaintiffs involved in the present lawsuit filed an action against the County in federal court, raising a facial challenge to Ordinance 96–12: *University Books and Videos, Inc. v. Metropolitan Dade County*, 33 F.Supp.2d 1364 (S.D.Fla.1999) (*"University Books I "*). On January 19, 1999, the District Court issued a preliminary injunction in *University Books I*, prohibiting the County from enforcing Ordinance 96–12 against Plaintiffs pending final trial of that case. *University Books and Videos, Inc. v. Metropolitan Dade County*, 33 F.Supp.2d 1364 (S.D.Fla.1999).

On April 13, 1999, before a trial was scheduled in University Books I, the County enacted Ordinance No. 99–32, further modifying County Code Section 33–255.1. It is this version of § 33–255.1 which is

---

and is kept clear from view of minors." § 33–255(b)(1).

"Adult video store" is defined to include "any business engaged in displaying, renting or selling videotapes which activity requires the exclusion of minors pursuant to Chapter 847, Florida Statutes, unless such activity comprises no more than fifteen (15) percent of the total floor area and is kept clear from view of minors." § 33–255(b)(4).

**3.** An "adult entertainment club" is "any business which features live entertainment requiring the exclusion of minors" pursuant to Chapter 847, Florida Statutes. § 33–255.1(b)(3).

**4.** BU–3 zones are districts in Unincorporated Miami–Dade County which are zoned for business use. The BU–3 zone is the liberal business zone, as compared to the BU–1(neighborhoods), BU–1A(limited) and BU–2(special) zones.

**5.** IU zones are districts in Unincorporated Miami–Dade County which are zoned for industrial use. There are four industrial districts, IU–1(light manufacturing); IU–2(heavy manufacturing); IU–3(unlimited manufacturing) and IU–C(conditional).

currently in effect. A true and correct copy of Section 33–255.1 is attached hereto as Appendix A.

Ordinance 99–32 extended the amortization deadline and allowed Plaintiffs to continue their adult businesses in their present locations until January 26, 2001. Before January 26, 2001, existing adult businesses could relocate, as of right, to a BU–3 area or an IU area. After January 26, 2001, adult businesses may be located in a BU–3 area as of right or an IU area after public hearing. At the time of trial, 39 adult businesses operate in the unincorporated County, between 33 and 36 of which will be required to close as of January 26, 2001 by the challenged zoning scheme, depending upon the outcomes of pending public hearings.

## II. The Character of Unincorporated Miami–Dade County

### General Statistics

Unincorporated Miami–Dade County spans 800.6 square miles and is home to 1,114,000 people. The developed area of unincorporated Miami–Dade County is over 432,000 acres. Within these confines, the County has designated and/or zoned different parcels of land for different uses, such as residential (RU), business (BU) and industrial (IU). The total number of unincorporated Miami–Dade County parcels which are subject to the Miami–Dade County zoning regulations and designated for business or industrial use is 12,389. These business and industrial parcels comprise 31,874.12 acres. The total number of unincorporated Miami–Dade County parcels which are subject to the Miami–Dade County zoning regulations and designated for business use is 5,839, and comprise 15,825.46 acres.

### BU–3 Availability

Pursuant to discovery requests, the County provided Plaintiffs with a chart identifying 41 BU–3 parcels in unincorporated Miami–Dade County that the County contends are legal for adult businesses to operate. These 41 parcels were identified using the spacing restrictions in the Zoning Ordinance, however, the County acknowledges that the chart does not take into account the restriction that two adult businesses cannot be located within 1000 feet of each other

Plaintiffs were able, through the testimony of their expert Steve Miller, to demonstrate that some of the 41 parcels are not actually available because they do not conform to the spacing restrictions set forth in the Zoning Ordinance. Seven of the parcels were "disqualified" because they were either too close to a park or a school, were actually in a BU–2 zone or were owned by Miami–Dade County Government. The disqualification of these seven parcel leaves 34 parcels in BU–3 zoning areas available for adult uses, comprising 39.83 acres, discounting the separation requirements.

The Plaintiffs were then able to show that the 34 remaining sites are limited by the prospective location of adult businesses which would disqualify other adult businesses by virtue of the ordinance's distance requirements. Therefore, the theoretical maximum number of adult businesses that could simultaneously exist in the BU–3 zoning districts is between 10 and 12, depending upon where adult businesses located in different areas.

### Industrial Zone

After January 26, 2001, an adult business may locate in an industrial zone only after public hearing. Rather than being a permitted use in an industrial area, this public hearing requirement makes adult businesses a "special use." [6]

6. There are three categories of uses in the various zoning districts in unincorporated Miami–Dade County: permitted uses, special uses and prohibited uses. Permitted uses in a particular zoning district are those uses which may be established in the particular zoning district as a matter of right. Special uses in a particular zoning district are those

For an adult business to locate in an industrial area, the adult business must submit an application to the County Zoning and Planning Department, which then processes the application, schedules a hearing and makes a recommendation to the CZAB. The CZAB, however, is not bound by the recommendation of the Zoning and Planning Department and may reject an application based upon any competent evidence supporting denial of the application according to the criteria established in the Code. Miami–Dade County Code § 33–311(A)(3) sets forth the "criteria" the CZAB should review at the hearing. It states that the CZAB may:

> Hear applications for and grant or deny special exceptions, that is, those exceptions permitted by the regulations only upon approval after public hearing, new uses and unusual uses which by the regulations are only permitted upon approval after public hearing; provided the applied for exception or use, including exception for site or plot plan approval, in the opinion of the Community Zoning Appeals Board, would not have an unfavorable effect on the economy of Miami–Dade County, Florida, would not generate or result in excessive noise or traffic, cause undue or excessive burden on public facilities including water, sewer, solid waste disposal, recreation, transportation, streets, roads, highways or other such facilities which have been constructed or which are planned and budgeted for construction, are accessible by private or public roads, streets or highways, tend to create a fire or other equally or greater dangerous hazards, or provoke excessive overcrowding or concentration of people or population, when considering the necessity for and reasonableness of such applied for exception or use in relation to the present.

MDCC § 33–311(A)(3). This is the only codification of criteria the CZAB may con-

sider. If and when the CZAB approves an adult business's application, the adult business must then obtain a certificate of use and occupancy. This certificate cannot be issued until there is CZAB approval.

The provision of the Miami–Dade County Code applicable to the conduct of hearings before the Community Zoning Appeals Board is MDCC § 33–310. This section states that legal and lay notices must be given between 20 and 30 days prior to the hearings and between 25 and 35 days prior to the hearing, respectively. There are, however, no other sections of the MDCC establishing any time limits concerning the hearings or the subsequent issuance of certificates of occupancy. Any other time constraints upon CZAB hearings or issuance of a certificate of use and occupancy are internal departmental guidelines, which are subject to change at the behest of the Department.

### III. Procedural History of this Action

Plaintiffs and the County filed cross motions for summary judgment. On December 20, 2000, the Court conducted a hearing on the cross motions for summary judgment, but denied both motions because there was a genuine issue of material fact regarding the actual number of sites available for adult establishments to locate. The Court ordered a bench trial to resolve this matter on January 11, 2001. Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and the agreement of the parties, a trial was held on January 11–12, 2001. The parties submitted evidence to supplement and augment that which already was on file in connection with the motions for summary judgment.

### CONCLUSIONS OF LAW

#### I. Jurisdiction, Venue and Standing

This Court has jurisdiction pursuant to Article III, United States Constitution, 28

---

uses which may be established in that particular district only by approval of the relevant CZAB. Prohibited uses in a particular zoning district are those uses that may not be established in that district.

U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. '§ 1367. Venue is proper in the Southern District of Florida, because the Plaintiffs and the Defendant all are residents and citizens of Miami–Dade County, Florida, and the causes of action all arose in Miami–Dade County, Florida.

Rich–Bon, Inc. and Always Hot have standing to bring this challenge because they are seeking to open an adult night club and an adult book and video store, respectively, in unincorporated Miami–Dade County. *See CR of Rialto v. City of Rialto*, 975 F.Supp. 1254 (C.D.Cal.1997). The other Plaintiffs have standing to challenge the ordinance because each Plaintiff has legally operated a business in unincorporated Miami–Dade County which the Zoning Ordinance will render unlawfully located after January 26, 2001. Plaintiffs all therefore suffer an injury in fact by virtue of the threatened enforcement of MDCC § 33–255.1. *See Virginia v. American Booksellers*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988).

## II. Restrictions on the Time, Place or Manner of Speech

The County's desire to restrain the unwanted secondary effects of adult businesses is nothing new. Many municipalities, both large and small, have enacted legislation which limits when, where and how certain expression may exist. The consistent justification for these regulations is to curtail the deleterious secondary effects—such as increased crime—of the expressive conduct. This concept of restricting the content of expression, through time place or manner restrictions, is constitutional as long as the regulation is aimed at the secondary effects of the speech and the restrictions are narrowly tailored to serve a substantial government interest and leave open reasonable alternative avenues of communication. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). It is undisputed that the Zoning Ordinance serves a substantial government interest and is narrowly tailored. Accordingly, the only issue before the Court is whether the Zoning Ordinance leaves open reasonable alternative avenues of communication.

## III. Standard for Reasonably Adequate Alternatives

In finding whether the Zoning Ordinance leaves open reasonable alternative avenues of expression, the Court must answer two questions: 1) what are the actual number of sites available and 2) do these sites provide a reasonable opportunity for expression. *See Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir.1999); *Boss Capital, Inc. v. City of Casselberry*, 187 F.3d 1251, 1254 (11th Cir.1999). The calculation of the number of sites is a question of fact, however, the methodology used, such as the inclusion or exclusion of various factors, is a question of law. *See David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1336 (11th Cir.2000). The question of whether the available sites provide a reasonable opportunity for expression is a question of law. It is not, however, a rigid test. Courts take into account "any factor that may affect whether adult establishments are 'on equal footing with other prospective purchasers and lessees.'" *Boss Capital*, 187 F.3d at 1253 (*quoting City of Renton*, 475 U.S. at 54, 106 S.Ct. 925). Factors which the Court may consider include "the community's population and size, the acreage available to adult businesses as a percentage of the overall size, the location of available sites, the number of adult businesses already in existence, and the number of adult businesses wanting to operate in the community in the future." *Id.* at 1254. *See also David Vincent*, 200 F.3d at 1336.

The County bears the burden of proffering the number of sites which are legal for adult businesses under the challenged regulations; the burden then shifts to Plaintiffs to establish that any of them are disqualified. "It is well established that

the burden of proof is on the [County] to justify a regulation which burdens the freedom of expression." *Alameda Books v. City of Los Angeles*, 222 F.3d 719, 724 (9th Cir.2000), *citing Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, n. 5, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *See also Lim v. City of Long Beach*, 217 F.3d 1050, 1054 (9th Cir.2000) ("it is clear that the burden of proving alternative avenues of communication rests on [the government]."); *Phillips v. Borough of Keyport*, 107 F.3d 164, 177 (3rd Cir.1997) (en banc) ("the existence of adequate alternative channels for adult entertainment expression is an essential element for the state to satisfy when it relies upon its authority to adopt time, place, and manner regulations.")

## IV. BU–3 Availability[7]

■ As stated in the findings of fact, Plaintiffs' expert was able to disqualify some of the BU–3 parcels originally submitted by the County. Therefore, under the Zoning Ordinance, there are 34 BU–3 parcels comprising 39.83 acres available to adult businesses. With the separation requirements, this should allow for approximately 10 to 12 businesses to legally locate in the BU–3 areas. The Court notes however, that even with the numbers proffered by the County—41 parcels comprising 70.91 acres—the legal analysis would not change.

### Area Comparison

The developed area of unincorporated Miami–Dade County which is subject to the challenged regulation is over 432,000 acres, based upon the above findings of fact and as stipulated by the parties. Thus, available BU–3 area is only 0.0092% of the developed area of Miami–Dade County. This percentage is exceedingly low.

In *Renton*, the Supreme Court approved a zoning law that left some 5% of the city's land area available. The circumstances here, however, are much different from those in *Renton*. In contrast with 520 acres offered to adult businesses for a small Seattle suburb, here the County offers a few dozen acres in a large metropolitan area with a population of well over one million. Adult businesses could legally operate anywhere within 5% of Renton's land area—the ordinance did not require that they be distanced from each other, as is the case here, so the entire 5% of the City of Renton in fact was legally available. Here, the percentage of land which is available is minuscule—less than three-fourths of 1% of the area zoned for business, and an infinitesimal percentage of the entire land area involved. The dispersal requirement establishes an overwhelming constraint when superimposed on the ordinance's other geographical limitations.

In post-*Renton* litigation, the courts considering this question " 'have generally found the number [of sites] to be inadequate if ... under 1% of the city acreage is potentially available.' " *University Books I*, 33 F.Supp.2d at 1371, *quoting Dia v. City of Toledo*, 937 F.Supp. 673, 678 (N.D.Ohio 1996). It is clear that .0092% of the city acreage is constitutionally deficient. Although "there is no constitutional requirement setting forth how many sites or what percentage of the land must be available for adult businesses," *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F.Supp. 1257 (C.D.Cal.1995), courts around the Country have routinely required that adult zoning ordinances leave far more potential space open than this Zoning Ordinance allows.

### Population

The ratio of possible adult businesses to population has been regarded by several

---

**7.** At the January 11, 2000 hearing, the County conceded that the sites available to Plaintiffs and others in BU–3 zones is constitutionally insufficient. However, this concession was made in a hypothetical setting and the Court finds its helpful, if not necessary, to analyze the availability of the BU–3 sites.

courts as another important gauge of the adequacy of available sites under such ordinances. The Eleventh Circuit has prominently cited this factor in both *David Vincent*, 200 F.3d at 1336, and *Boss Capital*, 187 F.3d at 1254. *See also University Books I*, 33 F.Supp.2d at 1371.

In *Centerfold Club, Inc. v. City of St. Petersburg*, 969 F.Supp. 1288 (M.D.Fla. 1997), the court stressed this consideration, holding that "although there is no brightline rule ..., the relationship between the number of available sites and the population of the community [is] important," 969 F.Supp. 1288, 1305 (M.D.Fla. 1997), *citing BBI Enterprises, Inc. v. City of Chicago*, 874 F.Supp. 890, 896 (N.D.Ill. 1995) (extolling this factor because it "speaks more directly in supply-and-demand terms"). The *Centerfold Club* court then held that 19 sites in a community of 238,726, or a ratio of one adult business per 12,565 persons, was inadequate. 969 F.Supp. at 1305–1306.

Under the relevant decisions, the ratio that would prevail in Dade County, approximately one adult business for every 100,000 residents, is far too low to comport with First Amendment standards. For example, this ratio is approximately one-tenth the proportionate number of potential businesses found inadequate in *Centerfold Club*. Therefore, by this measure as well, the ordinance fails to leave open reasonable avenues of communication.

### Available Sites to Existing Adult Businesses

Finally, the Zoning Ordinance leaves open insufficient sites because it would allow for the relocation and survival of only a small number of existing adult businesses. The Eleventh Circuit has considered as one of the most important factors in this analysis "the correlation of available sites to existing adult businesses." *David Vincent*, 200 F.3d at 1336. *See also Woodall v. City of El Paso*, 49 F.3d 1120, 1126 (5th Cir.1995); *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1532–33 (9th Cir.1993) (the number of sites available for adult businesses under the new zoning regime must be greater to or equal to the number of adult businesses in existence at the time the new zoning regime takes effect).

In *University Books I*, this Court applied this "supply-demand analysis" to "examine whether the sites left open to Plaintiffs would be adequate to satisfy their demand to operate such businesses." 33 F.Supp.2d at 1372.

> Assuming that Plaintiffs would not continue to operate their businesses if there were not sufficient demand to support them, the ten sites that [the County] alleges will be open if the Zoning Ordinance were to go into effect likely would be insufficient to meet the demand .... Under this supply-demand analysis as well, Plaintiffs are likely to succeed on the merits of their claim that the Zoning Ordinance fails to satisfy the constitutional requirement of allowing for reasonable alternative avenues of communication.

*Id.*

Plaintiffs have established that the County will be able to produce no more than a dozen locations for adult establishments to locate. With 39 existing adult entertainment establishments, the ordinance would necessarily reduce the proven market for adult fare by at least two-thirds. The Court finds that this reduction is anything but reasonable. By definition, such a scheme does not leave open "adequate alternative channels of communication."

Accordingly, whether the potentially available sites are measured as a proportion of Dade County's land area, by the ratio of possible adult businesses to the County's population, or·in terms of the ability of all existing adult businesses to relocate, the County's adult zoning ordinance fails to comport with prevailing constitutional standards and is facially invalid under the First Amendment.

## V. IU Availability

■ As described in the findings of fact, an adult business may only locate in an IU zone after approval at a public hearing.[8] The requirement that an adult business get discretionary approval from the CZAB before locating in an IU zone makes the public hearing the equivalent of a license. *See Lady J. Lingerie,* 176 F.3d at 1361. Therefore, as a form of prior restraint, the public hearing requirement is impermissible because it grants the CZAB unbridled discretion in its decisionmaking and has too much potential for delay. *See Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

In *Shuttlesworth,* the Supreme Court stated:

> [A]n ordinance which … makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Id.* at 151, 89 S.Ct. 935; *see also FW/PBS v. City of Dallas,* 493 U.S. at 215, 225–26, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("While prior restraints are not unconstitutional per se any system of prior restraint comes to this Court bearing a heavy presumption against its constitutional validity.")

The Eleventh Circuit has recently applied these procedural safeguards in a decision precisely on point, *Lady J. Lingerie, Inc.,* 176 F.3d at 1358. Applying the law of prior restraints, the court invalidated procedures for obtaining a zoning excep-

tion as applied to adult entertainment establishments.

> The main objection the plaintiffs have to the ordinance is that there are only two sites in the [permissible] zone that comply with the distance requirements. This means that practically all adult entertainment establishments must apply for a zoning exception to operate anywhere in the City. The City concedes this, but argues that there are 93–plus sites available in [another] zone, and that we should include those sites in the calculation....

*Id.* at 1361. The court concluded that the zoning scheme provided reasonable alternative avenues only if the 93–plus sites counted. They did not count, however, because the criteria for the zoning exception afforded city officials undue discretion. In order to pass First Amendment muster, the Court noted, "[s]tandards must be precise and objective." *Id.* at 1362.

> None of the [Jacksonville zoning code's] nine criteria is precise and objective. All of them—individually and collectively—empower the zoning board to covertly discriminate against adult entertainment establishments under the guise of 'compatibility' or 'environmental' considerations.

*Id.* This decision lays to rest the County's implicit position that the theoretical availability of IU sites under vague, discretionary criteria requiring that the permitted use will be "compatible with the surrounding area"—can temper the effects of the zoning ordinance's restrictions.

Also in *Lady J. Lingerie,* the Court held the zoning scheme was unconstitutional because it lacked specified brief time limits for action on an application for an exception, and "[t]he opportunity for public officials to delay is another form of discre-

---

**8.** The fact that existing adult businesses that qualified as lawful nonconforming uses until January 26, 1996 once were permitted to transfer their businesses to qualifying IU zoning districts is of no consequence. The content of a previous ordinance is irrelevant to Plaintiffs' challenge to the current one. *See*

*Wiener v. County of San Diego,* 23 F.3d 263 (9th Cir.1994). Plaintiffs' action is a pre-enforcement challenge to the ordinance as it will exist after January 26, 2001, when locations in IU zoning districts are available only after a "public hearing" before the relevant Community Zoning Appeals Board ("CZAB").

tion." 176 F.3d at 1362. Citing *FW/PBS*, the court invalidated the ordinance because it failed "to put any real time limits on the zoning board. The board must hold a public hearing within 63 days after a business applies for an exception.... But nothing requires a decision within 63 days, or any other time period. The ordinance's failure to require a deadline for decision renders it unconstitutional." *Id.* at 1363. The County's procedures likewise contain no deadlines, neither the hearing nor decision on the application need transpire within any brief, definite time frame.

*Lady J. Lingerie* is materially indistinguishable from this case. First, the public hearing requirement grants too much discretion to the CZAB. The procedure for public hearings, also called special exceptions, allows the CZAB to accept or reject an application based on vague and subjective criteria. The Code, under § 33–311(A)(3), affords the CZAB boundless discretion to reject applications unless the use "would not have an unfavorable effect on the economy," and on grounds of "the compatibility of the applied for exception or use with such area and its development." The standards for granting or denying an application are not precise or objective. Indeed, they are almost entirely subjective. This is improper. *See Lady J. Lingerie*, 176 F.3d at 1362 ("Standards must be precise and objective.") The criteria set forth in § 33–311(A)(3) simply do not offer any meaningful guidance to the CZAB "as to how to conduct its affairs to facilitate appropriate public, and meaningful judicial, scrutiny in a constitutionally sensitive area." *See T & A's Inc. v. Town Board of the Town of Ramapo*, 109 F.Supp.2d 161 (S.D.N.Y.2000).

The County argues that the CZAB does not have unbridled discretion because under Florida law a request for special exception must be approved unless it is shown by the opposition that the public interest will not be served or the result will be incompatible with the surrounding area if it is granted. *See Irvine v. Duval County Planning Commission*, 495 So.2d 167 (Fla.1986); *Jesus Fellowship v. Miami–Dade County*, 752 So.2d 708, 709 (Fla. 3d DCA 2000); *Metropolitan Dade County v. Fuller*, 515 So.2d 1312, 1313 (Fla. 3d DCA 1987). While it does appear that there is a shift of burdens when a special exception is applied for, this is of no consequence. The cases cited by the County merely underscore the fact that even if the burden does shift, the CZAB can still deny an application if it does not serve the public interest or is incompatible with surrounding land area. Considerations of the public interest or incompatibility with surrounding land area are precisely the subjective and vague criteria that were rejected in *Lady J. Lingerie*. The County fails to recognize that this procedure simply has too much potential for censorship of protected speech.

The public hearing requirement also allows for rejection of an application by the opportunity for the County to engage in censorship by delay. While the County claims that there are internal operating rules which provide for more stringent timelines, these informal, easily altered internal operating rules do not negate the failure of the ordinance on its face to provide for brief specified time limits. The Code, under § 33–310, provides only that the County must notify adjoining property owners and advertise the hearing by a fixed date prior to hearing an application for an exception. Nothing binds the CZAB to hold the hearing, much less to render a decision, within any set time frame.

As the Eleventh Circuit held in *Lady J. Lingerie*, the special exception criteria may still be used to grant or deny applications by applicants who are not entitled to First Amendment Protection. *Lady J. Lingerie*, 176 F.3d at 1362. "We only find troublesome the application of the otherwise-valid zoning criteria to adult businesses like the plaintiffs'." *Id.* In effect, the public hearing requirement creates too

much potential for denial of applications on the basis on the content of the speech.

### III. *Conclusion*

In identifying the parcels of land which are to be included in the alternative avenues of communication, this Court is constrained by the holdings in *FW/PBS* and *Lady J Lingerie* to reject those parcels for which there is the possibility of discretionary rejection or undue delay. Accordingly, the only parcels which may be properly considered in evaluating whether the challenged regulations provide a reasonable opportunity for Plaintiffs to relocate are those in BU–3 zones, which as discussed above, are inadequate.

Because the court finds that the challenged scheme of ordinances violate the First and Fourteenth Amendments to the United States Constitution, it is unnecessary to reach the claims that it violates the Florida Constitution because such a finding would not afford Plaintiffs any additional relief. Accordingly, it is

**ORDERED AND ADJUDGED** that Judgment in entered in favor of the Plaintiffs and against the Defendants; it is further,

**ORDERED AND ADJUDGED** that Defendant Miami–Dade County and its agents, servants, employees and anyone acting in concert with any of them are permanently enjoined from undertaking or continuing any criminal, civil or administrative action to enforce the provisions of Miami–Dade County Code § 33–255.1 against any of the Plaintiffs, their agents, servants, employees and anyone acting in concert with any of them. It is further,

**ORDERED AND ADJUDGED** that the Court shall retain jurisdiction over this matter for a period of ninety (90) days to entertain applications for costs and attorneys fees. It is further

**ORDERED AND ADJUDGED** that any pending motions are rendered moot by this Order.

## APPENDIX A

### MIAMI–DADE COUNTY CODE § 33–255.1

#### ZONING
#### Sec. 33–255.1. Additional uses permitted.

(a) In the development and enforcement of this ordinance it is recognized that there are uses which because of their very nature are recognized as having serious objectionable characteristics, particularly when several of them are concentrated in any given location, thereby having a deleterious effect upon the adjacent business and residential areas. It is desirable, therefore, to locate these adult oriented activities away from residential areas and public facilities used frequently by minors such as schools, churches, parks, libraries, and day care centers.

(b) For the purpose of this section the following definitions for terms used herein shall apply:

(1) *Adult bookstore.* Any business engaged in displaying, distributing, bartering, renting or selling printed matter, pictures, films, graphic or other materials which activity requires the exclusion of minors pursuant to Chapter 847, Florida Statutes, unless such activity comprises no more than fifteen (15) percent of the total floor area and is kept from clear view of minors.

(2) *Adult theater.* Any business engaged in presenting films, theatrical productions, performances, recitals, displays, printed matter or other entertainment which activity requires the exclusion of minors pursuant to Chapter 847, Florida Statutes.

(3) *Adult entertainment club.* Any business which features live entertainment requiring the exclusion of minors pursuant to Chapter 847, Florida Statutes.

(4) *Adult video store.* Any business engaged in displaying, renting or selling videotapes which activity re-

quires the exclusion of minors pursuant to Chapter 847, Florida Statutes, unless such activity comprises no more than fifteen (15) percent of the total floor area and is kept from clear view of minors.

(5) *Massage establishment.*

a. Any shop, parlor, establishment or place of business wherein all or any one (1) or more of the following named subjects and methods of treatments are administered or practiced: Body massage either by hand or by any mechanical or electrical apparatus or device (excluding fever therapy), applying such movements as stroking, friction, rolling, vibration, kneading, cupping, petrissage, rubbing, effleurage or tapotement.

b. Nothing in this ordinance shall be construed as applying to State of Florida licensed massage therapists, barbers, cosmetologists, manicurists, pedicurists, physical therapists' assistants, midwives, practical nurses, agents, servants or employees in licensed hospitals or nursing home or other licensed medical institutions, licensed physicians, osteopaths, chiropractors, podiatrists, naturopathic physicians or other licensed medical practitioners, or their agents, servants, or employees acting in the course of such agency, service or employment under the supervision of the licensee.

c. Provided, however, that, for the purpose of this ordinance, the term "massage establishment" shall not include any massage establishment wherein at least one (1) State of Florida licensed massage therapist is employed and on duty full time during the hours open for business.

(6) *Adult modelling establishments.* Any establishment offering nude or partially nude modelling sessions or lingerie, swimwear or photography modelling sessions between two (2) or more persons requiring the exclusion of minor pursuant to Chapter 847, Florida Statutes.

(7) *Encounter studio.* All establishments offering nude or partially nude encounter sessions between two (2) or more persons, nude or partially nude dance encounter sessions between two (2) or more persons, and sexual consultation requiring the exclusion of minors pursuant to Chapter 847, Florida Statutes.

(c) The following uses shall only be permitted in the BU–3 Zone:

(1) Adult bookstore;

(2) Adult theater;

(3) Adult entertainment club;

(4) Adult video store;

(5) Massage establishment;

(6) Adult modelling establishment;

(7) Encounter studio.

(d) Unless approved as a special exception, none of the uses set forth in Subsection 33–255.1(c) shall be permitted (i) within one thousand (1,000) feet of a private school as defined in Section 33–151.11, public school, church, public park, public library, day care center or nursery for children; (ii) within one thousand (1,000) feet of any of the uses described in Subsection 33–255.1(c); and (iii) within six hundred sixty (660) feet of any RU or EU zoning district; provided, however, that the spacing requirements above shall not apply where the adult entertainment use is separated from the uses set forth at Subsections 33–255.1(d)(i) and Subsection 33–255.1(d)(iii) above by a county or state road of not less than five (5) lanes, an expressway, a river or lake. All other distance and spacing requirements pursuant to the Code shall apply.

(e) The distance and spacing requirements set forth in Subsection (d) shall be measured as follows:

(1) From a church the distance shall be measured by following a straight line from the nearest point of the proposed place of business, whether it is the structure itself or the parking lot used by the patrons of the proposed place of business, to the nearest point on the church property.

(2) From a private or public school the distance shall be measured by following a straight line from the nearest point of the proposed place of business, whether it is the structure itself or the parking lot used by the patrons of the proposed place of business, to the nearest point on the school grounds.

(3) From another Subsection 33–255.1(b) use the distance shall be measured by following a straight line from the front door of the proposed place of business to the nearest point of the existing Subsection 33–255.1(b) use.

(4) From a RU and EU districts the distance shall be measured by following a straight line from the nearest point of the proposed place of business, whether it is the structure itself or the parking lot used by the patrons of the proposed place of business, to the nearest boundary of the RU or EU zoning district.

(5) From a public park the distance shall be measured by following a straight line from the nearest point of the proposed place of business, whether it is the structure itself or the parking lot used by the patrons of the proposed place of business, to the nearest point on park grounds.

(6) From a public library the distance shall be measured by following a straight line from the nearest point of the proposed place of business, whether it is the structure itself or the parking lot used by the patrons of the proposed place of business, to the nearest point of the library property.

(7) From day care centers or nurseries for children the distance shall be measured by following a straight line from the nearest point of the proposed place of business, whether it is the structure itself or the parking lot used by the patrons of the proposed place of business, to the nearest point on the property of the day care center or the nursery.

(f) For the purposes of establishing the distance between the uses set forth in Subsection 33–255.1(b), and between such uses and private schools as defined in Section 33–151.11, public schools, churches, public parks, public libraries, day care centers or nurseries for children, or RU and EU zoning districts, the applicant for such use shall furnish a certified survey from a registered surveyor. Such sketch shall indicate the distance between the proposed place of business, and any existing Subsection 33–255.1(b) use, any church, public school, private school, public park, public library, day care center or nursery for children or RU or EU zoning district. Each sketch shall indicate all such distances and routes. In case of dispute, the measurement, scaled by the Director of the Department of Planning and Zoning shall govern.

(g) *Exemptions.* This section shall not apply to accredited universities, accredited colleges or other accredited educational institutions, museums, art exhibits, arts and cultural performance theaters and playhouses or commercial professional photography and portrait studios which may use nude subjects for their photographs or portraits.

(h) *Nonconforming uses.*

(1) Any adult entertainment use existing as of January 26, 1996, which conformed to the regulations in effect when such use was established, that becomes nonconforming by the enactment of Ordinance No. 96–12, shall be removed or discontinued not later than January 26, 2001; provid-

ed, however, that any such nonconforming use which satisfies the spacing requirements set forth at Section 33–255 .1(d) shall not be required to discontinue. On or before January 26, 2001, any such nonconforming use which is not in compliance with Section 33–255.1(d) may be transferred to a site which satisfies the requirements of Section 33–255.1(d) in a BU–3 or IU zoning district. Subsequent to January 26, 2001, any new adult entertainment use which desires to locate at a site which satisfies the requirements of Section 33–255.1(d) in an IU zoning district will require a public hearing.

(2) Any existing business, which was not operating in good legal standing prior to this ordinance and which has been determined to be a nuisance by the Nuisance Abatement Board, or convicted for criminal violations within the preceding three (3) years, shall remove or discontinue the nonconforming use ten (10) days after the effective date of this ordinance.

(3) Any lawfully existing business which becomes nonconforming by the enactment of this ordinance may file an appropriate zoning hearing application with the Department of Planning and Zoning.

(Ord. No. 91–112, § 1, 10–1–91; Ord. No. 92–122, § 1, 10–13–92; Ord. No. 96–12, § 1, 1–16–96; Ord. No. 98–125, § 21, 9–3–98; Ord. No. 99–32, § 1, 4–13–99)

Sec. 33–256. Setbacks, cubic content, yard area, etc.

Setbacks, cubic content, yard area, lot sizes, etc., shall be as specified in article II of this chapter.

(Ord. No. 74–25, § 1, 4–16–74)